UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEMATICITO, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SPECTRUM FIVE LLC,<br><br>Defendant. | Case No. 16-cv-01859-RS<br><br>**ORDER GRANTING PLAINTIFFS' MOTION TO REMAND** |

## I.   INTRODUCTION[1]

Time is of the essence—particularly when a party seeks access to the federal courts. This general principle is true even when defendants assert counterclaims or defenses grounded in patent law—a subject matter over which Congress prefers federal courts to be the arbiters. *See generally Andrews v. Daughtry*, 994 F. Supp. 2d 728, 731-32 (M.D.N.C. 2014) (discussing the legislative history of 28 U.S.C. § 1446 and § 1454(b)). Nevertheless, defendants seeking removal of an action to federal court must do so in a timely fashion. Defendant Spectrum Five, LLC, did not. Nor has it shown cause for its tardy removal from state court. Accordingly, this action will be remanded to Santa Clara County Superior Court, which has been overseeing this action for nearly a year and a half. Because plaintiffs' motion to remand must be granted, there is no reason to address plaintiffs' alternative motion to dismiss for lack of subject-matter jurisdiction.

---

[1] Pursuant to Local Rule 7-1(b), this matter is suitable for resolution without oral argument.

## II.     FACTS AND PROCEDURAL HISTORY[2]

Plaintiffs NematicITO, Inc., and Dedi Haziza own proprietary mobile waveguide antenna systems, which it agreed to license to defendant Spectrum Five, LLC.  In exchange for this exclusive license, Spectrum Five agreed to pay fixed royalty payments in increments totaling $1 million:  (1) $200,000 to be paid thirty days after the effective date of the agreement; (2) $300,000 to be paid thirty days after successful completion of a Critical Design Review and delivery to Spectrum Five of the non-functional prototype of the aviation product; (3) $250,000 to be paid thirty days after completion of the prototype automotive antenna; and (4) $250,000 thirty days after completion of the acceptance testing program for the automotive antenna.  Compl. Ex. A at 4, Agreement ¶ III.a).  The "aviation product" and "automotive product" at issue were further described in the contract by reference to "Attachment II," which included the cover page of two patents issued to Haziza—U.S. Patent Nos. 7,656,359 and 7,884,779.  *See id.* at 11-12.  In addition, Attachment II noted a pending patent application for dual polarization array and feeds; phase/frequency shifting waveguide and array; polarizing radiating elements; and planar wave-spider feeds.  *Id.* at 13.

After signing the agreement, NematicITO started working to create the industrial designs as required by the contract.  The deadline to make the first royalty payment came and passed, and Spectrum Five did not send NematicITO the payment.  Subsequently, Spectrum Five informed NematicITO that it was having difficulty making payments, and NematicITO agreed to a few extensions.  Ultimately, however, after Spectrum Five failed to meet extended deadlines, NematicITO chose to terminate the agreement and take the matter to court.

Plaintiffs filed this action in Santa Clara County Superior Court in November 2014.  Spectrum Five answered the complaint, served discovery responses, and defended against the claims.  In February 2015, in response to NematicITO's form interrogatories, Spectrum Five stated its belief that NematicITO "did not own the necessary technology to develop the antenna

---

[2] All facts regarding the underlying claims are drawn from the complaint.

system specified in" the agreement and that "the three patents" Spectrum Five licensed "were inadequate to meet the requirements of the production design specified in the [contract], from either a two-way or wideband perspective." Fisher Decl. Ex. A, Response to Form Interrogatory No. 50.2.  In April 2015, Spectrum Five expanded upon this accusation: "[T]he two fundamental patents forming the basis for the proposed NematicITO aeronautical and automotive tracking mobile antenna systems do not provide an adequate foundation to satisfy the requirements of the [contract]." Fisher Decl. Ex. B, Response to Special Interrogatory No. 22.  Finally, when asked to identify the documents supporting Spectrum Five's belief that NematicITO's patents did not provide adequate foundation to perform the contract, Spectrum Five identified the complaint, the agreements, and the patents attached to the agreement.  Fisher Decl. Ex. C at 9, Response to Form Interrogatory 15.1.

During this time, Spectrum Five's relationship with its prior counsel became strained, culminating, in October 2015, with a successful motion to be relieved as counsel.  While Spectrum Five was unrepresented, in December 2015, plaintiffs filed a motion for summary adjudication. Spectrum Five contends it was unaware of the pending motion until February 23, 2016, because service of the motion was defective.  Shortly thereafter, on February 26, 2016, Spectrum Five retained new counsel.

During this period of time, Spectrum Five's principal overseeing the litigation, David Wilson, experienced a loss in the family.  In light of these various problems, the Santa Clara County judge overseeing the case continued the hearing on plaintiffs' motion for summary adjudication to April 26, 2016.

On March 15, 2016, Spectrum Five filed a motion to amend the answer and add counterclaims, including claims for declaratory judgments of non-infringement, invalidity of patent, patent license obligations, failure of consideration, and lack of patent ownership.  That same day, plaintiffs served answers to requests for admission, which Spectrum Five contends, confirms the viability of its counterclaims arising under patent law.  On April 8, 2016, nearly a year and a half after plaintiffs filed their complaint, Spectrum Five filed a notice of removal in this

court pursuant to 28 U.S.C. § 1331 (federal question), § 1332 (diversity), § 1367 (supplemental jurisdiction), § 1338 (patent, plant variety protection, copyrights, mask works, designs, trademarks, and unfair competition), § 1454 (patent, plant variety, and copyright cases), § 1446 (removal jurisdiction), § 2201 and § 2202 (declaratory judgments), and 35 U.S.C. § 271 (patent infringement).

## III.   LEGAL STANDARD

Defendants may remove actions to federal court only if the federal court has subject-matter jurisdiction to adjudicate the claims at issue. 28 U.S.C. §1441(a). "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447 (2012). Courts strictly construe the removal statute against finding federal subject matter jurisdiction, and the defendant bears the burden of establishing the basis for removal. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). In addition, the removing defendant must comply with the mandatory time limits of 28 U.S.C. §1446(b). *Fistoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1989). "[A] timely objection to a late petition [for removal] will defeat removal . . . ." *Id.* Where doubt exists regarding the right to remove an action, it should be resolved in favor of remand to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

## IV.   DISCUSSION

**A. Federal Jurisdiction Premised on Patent Counterclaims**

The doors to the federal courthouse are usually not open to defendants invoking the protection of federal law as a defense to state court claims. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908). Generally, federal jurisdiction is present "only when the plaintiff's statement of his own cause of action shows that it is based upon [federal law.]" *Id.* at 152. Applying this well-established rule, the Supreme Court held defendants asserting counterclaims arising under federal patent law could not remove actions to federal court. *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002). As a result, certain members of Congress became concerned about the possibility that federal patent law might become discordant

if state courts adjudicated various patent issues. *See generally Andrews*, 994 F. Supp. 2d at 731. To remedy this concern, Congress passed the 2011 Leahy-Smith American Invents Act. Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. B.J. 539, 539 (2012) (citing H.R. Rep. No. 112-98, at 81 (2011), 2011 U.S.C.C.A.N. 67). As part of the so-called "*Holmes Group* fix," Congress added a new removal statute, which allows "any party [who] asserts a claim for relief arising under any Act of Congress relating to patents" to remove that action to federal court. 28 U.S.C. § 1454(a). In other words, defendants with counterclaims arising under patent law were no longer forced to litigate their claims in state court.

The *Holmes Group* fix did not, however, leave open the federal courthouse doors indefinitely. Instead, when section 1454(a) forms the basis for removal to federal court, the removing party must comply with "the time limitations contained in [28 U.S.C. §] 1446(b). "Section 1446(b) provides 'two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Busch v. Jakov Dulcich & Sons LLC*, No. 15-CV-00384-LHK, 2015 WL 3792898, at *3 (N.D. Cal. June 17, 2015) (quoting *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689, 692 (9th Cir. 2005) (internal quotation marks omitted)).[3] "Thus, even under section 1454, a defendant who does not remove timely will be subject to a remand motion pursuant to section 1446." *Andrews*, 994 F. Supp. 2d at 732. District courts may extend the deadline to remove actions with counterclaims arising under patent law "at any time for cause shown." 28 U.S.C. § 1454(b)(2).

**B. The Timeliness of Spectrum Five's Removal**

Plaintiffs contend Spectrum Five's thirty-day clock started on November 11, 2014, when it received the complaint and attachments. These documents, they argue, provided notice of

---

[3] *Harris* involved an interpretation of 28 U.S.C. § 1146(b)(3), which uses language identical to that of section 1446(b)(3). *Compare* 28 U.S.C. § 1146(b)(3), *with* 28 U.S.C. § 1446(b)(3).

ORDER GRANTING MOTION TO REMAND
CASE NO. 16-cv-01859-RS

5

potential patent counterclaims.  By this measure, Spectrum Five's removal is more than a year late.  Spectrum Five resists any conclusion that the complaint notified it of potential patent counterclaims; instead, it insists the thirty-day clock began ticking when, on March 15, 2016, it received NematicITO's answers to requests for admission—the first "paper from which it [could] be ascertained from the face of the document that removal [was] proper." *Harris*, 425 F.3d at 694.  The date Spectrum Five asserted counterclaims cannot serve as the date triggering the thirty-day clock to seek removal to federal court.  *Accutrax, LLC v. Kildevaeld*, 140 F. Supp. 3d 168, 2015 WL 6134377, at *3 (D. Mass. 2015) ("[T]he date of the filing of the counterclaim cannot be the trigger that starts the thirty-day deadline under § 1454.").  Thus, Spectrum Five's notice of removal is timely only if the responses to the requests for admission constitute "a paper" giving notice for the first time that counterclaims arising under patent law exist.

Discovery responses qualify as "other paper[s]," which may offer clues that a case is removable, thereby triggering the thirty-day removal clock.  *See Moltner v. Starbucks Coffee Co.*, 624 F.3d 34, 36-37 (2d Cir. 2010) (holding responses to a supplemental demand for relief in accordance with New York C.P.L.R. § 3017(c) qualify as papers giving notice of removability); *see also* William W. Shwartzer, A. Wallace Tashima & M. Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* ¶¶ 2:3317, 3320 (2015).  If Spectrum Five had notice of this action's removability, however, the substance of NematicITO's discovery responses is of no moment.

Spectrum Five's current position is difficult to square with its responses to discovery throughout the litigation.  Plaintiffs' complaint included the agreement at issue and the front page of the two patents Spectrum Five now contends give rise to the counterclaim.  Indeed, Spectrum Five's responses to plaintiffs' discovery requests further confirm that it believed all along that plaintiffs did not own sufficient intellectual property to satisfy the requirements of the agreement.  This does not mean Spectrum Five's subjective knowledge is the deciding factor.  It is not.  *See Harris*, 425 F.3d at 694 ("We now conclude that notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry.").  Rather, Spectrum Five's discovery

responses merely provide evidence that objectively it had all information necessary to ascertain whether patent law offered it defenses or counterclaims at the time the initial pleadings were served. Accordingly, Spectrum Five's notice of removal is untimely.[4] *See Andrews*, 994 F. Supp. 2d at 733 ("[T]he statements of Daughtry's counsel at oral argument on Plaintiffs' first motion to remand demonstrate that Daughtry knew . . . he claimed ownership of the contested . . .songs and sounds recordings under the Copyright Act.").

### C. Good Cause for a Deadline Extension

Courts may extend the deadline to file a notice of removal for "cause shown." 28 U.S.C. § 1454(b)(2). The few district courts to consider this language have concluded at a minimum the standard imposes some burden on the removing party to justify why its tardiness should be excused." *SnoWizard, Inc. v. Andrews*, Civ. A. No. 12–2796, 2013 WL 3728410, at *6 (E.D. La. July 12, 2013); *see also Univ. of Ky. Research Found., Inc. v. Niadyne, Inc.*, Civ. No. 13–16–GFVT, 2013 WL 5943921, at *10 (E.D.Ky. Nov. 5, 2013). "[O]versight, inadvertence, or excusable neglect" are usually insufficient to justify tardiness. *Niadyne*, 2013 WL 5943921, at *10. For further guidance about the meaning of "cause shown," district courts have turned to authorities interpreting Federal Rule of Civil Procedure 6(b), which allows district courts to extend deadlines for "good cause." *See Andrews*, 994 F. Supp. 2d at 735. "'Good cause' is a non-rigorous standard," but it generally requires a showing that the "requested relief was reasonable, justified, and would not result in prejudice to any party." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1260 (9th Cir. 2010).

Spectrum Five insists good cause exists because its principal was dealing with a family medical emergency for a year and a half and it was unrepresented for a period of three months. While these circumstances may in some cases arise to good cause, Spectrum Five has not shown

---

[4] This is not to say plaintiffs' complaint make plain their claims arise under patent law. There may very well be cases where counterclaims and defenses arise from patent law even when the claims advanced in the complaint do not. There is no need to reach that question now, however, because Spectrum Five failed to file a timely notice of removal.

they do in this case.  It received notice of the possibility of counterclaims arising from patent law upon receipt of the initial complaint.  That David Wilson had to deal with a family member's poor health for nearly the entire course of the litigation does not explain why another employee or principal of Spectrum Five was unavailable to review this litigation.  Moreover, Wilson's family troubles did not interfere with Spectrum Five's ability to respond to discovery during the year and a half since this case was initially filed.  The three-month period during which Spectrum Five was unrepresented does not explain or excuse its failure to seek removal while it was represented by counsel before December 2015.

Finally, the fact Spectrum Five filed a notice of removal mere days before its deadline to respond to plaintiffs' motion for summary adjudication demonstrates that plaintiffs will be prejudiced by granting an extension here.  Plaintiffs have expended considerable time, effort, and resources during this litigation and to prepare its motion for summary adjudication—an event that may move this action closer towards resolution.  *See Andrews*, 994 F. Supp. 2d at 35-36 (denying extension when the removing defendant had been engaged in litigation in state court for three months before seeking removal); *Donahue v. Tokyo Electron Am., Inc.*, 42 F. Supp. 3d 829, 839 (W.D. Tex. 2014) (granting an extension where defendants delayed only three weeks and had not extensively litigated in state court).

All in all, Spectrum Five has failed to demonstrate cause for its failure to remove this action earlier.  Accordingly, plaintiffs' motion to remand must be granted and the issue of subject-matter jurisdiction over Spectrum Five's counterclaims need not be reached.

V.   CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand this action to Santa Clara County Superior Court is granted.

**IT IS SO ORDERED**.

Dated: June 6, 2016

RICHARD SEEBORG  
United States District Judge

ORDER GRANTING MOTION TO REMAND  
CASE NO. 16-cv-01859-RS

9